393 S.E.2d 221

**STATE of West Virginia**

v.

**John R. MAYNARD.**

No. 19135.

Supreme Court of Appeals of West Virginia.

March 30, 1990.

G. Patrick Jacobs, Bickley, Jacobs & Barkus, Charleston, for John R. Maynard.

Roger Tompkins, Atty. Gen., Joanna Tabit, Asst. Atty. Gen., Charleston, for State of W.Va.

WORKMAN, Justice:

This case is before the Court upon the appeal of John R. Maynard. It arises from a December 4, 1987 jury verdict in Kanawha County, in which the defendant was found guilty of aggravated robbery by use of a firearm of the Village Chevron located

in the Kanawha City area of Charleston, West Virginia. The defendant raises three assignments of error: (1) the trial court committed reversible and prejudicial error by allowing Detectives Young and Lanham to testify concerning an anonymous phone call which implicated John Maynard in the robbery of the Village Chevron on December 10, 1986; (2) the trial court committed reversible and prejudicial error by refusing to give two instructions offered by the defendant regarding the identification of the assailant by the victim when said identification was the key issue in the trial; and (3) the trial court committed reversible and prejudicial error by refusing to give an instruction offered by the defendant regarding a situation in which two inferences, both equally plausible, could have been drawn from the evidence in the case. We find that the lower court committed no reversible error in its rulings pertaining to the above-mentioned assignments and therefore affirm the defendant's conviction.

On December 10, 1986, at approximately 9:30 p.m. Sandra Rambaugh was working at the Village Chevron, a convenience store, when a man walked up to the counter where she was counting change and demanded money while brandishing a handgun. The victim described the man as a white male, approximately six feet tall and thin, weighing about one hundred and fifty to one hundred and sixty pounds. She also testified that he was very pale with a very pointed face, a prominent Adam's apple, blue eyes and blonde or light-colored hair. Rambaugh further described him as having a mustache and that his teeth were misaligned, crooked or "sort of pointed."

After taking $173.00, the man disappeared on foot. The money was never recovered. The police appeared on the scene almost immediately after Rambaugh's call for help.

Subsequently, an anonymous phone caller contacted a Charleston Police Department detective and implicated the defendant in the robbery of the convenience store. Based on the phone call, a photograph of the defendant was placed in a book of photographs containing the pictures of ninety-two other white males. This book was shown to Rambaugh who immediately identified the defendant as the robber. Later, she was shown a second photographic array of six white males which contained a more recent photograph of the defendant. The victim again identified the defendant's photograph as the man who committed the robbery.[1]

Other evidence presented at trial against the defendant consisted of footprint photographs which were discovered at the crime scene and clothing and work boots found on the defendant upon his arrest.

The defendant introduced evidence, including his own testimony, which attempted to establish that he was attending a party with his sister, her boyfriend and his brother at the time of the robbery. The defendant's attorney on cross-examination further attacked the description given by Rambaugh of the culprit at both the suppression hearing and in court during the trial.[2] Finally, the defendant stressed through his own testimony and through witnesses called in his behalf, what he considered to be major characteristics which the victim should have noticed but didn't, including the partial dental plate, tatoos and an earring.

I.

The defendant's first assignment of error regards the testimony of two detectives concerning an anonymous phone call.[3] At trial, both Detectives Lanham and Young were permitted to testify that Detective

---

1. The first photo array was comprised of photographs from police files of white males of various descriptions. The second photo array consisted of persons all fitting the description of the culprit. The suggestability of the photo arrays was never made an issue by the defendant.

2. Rambaugh did make an in-court identification of the defendant at trial.

3. At the suppression hearing, Officer Young testified on direct examination that the identity of the phone caller was by then known by the police, but it remained undisclosed. Thus, although the caller's identity was known, neither side attempted to call her as a witness.

Lanham had received an anonymous phone call from an elderly lady who implicated the defendant in the Village Chevron robbery.[4] The trial court held that:

> the rules permit as far as hearsay evidence, sufficient hearsay to show motive as to why a party acted as he did. That's perfectly proper under those rules of evidence. I'm excluding details that would buttress and enhance the believability of any hearsay statement and limiting the hearsay to the mere fact that the call came in, a call came implicating—a call came in that implicated the defendant.

The appellant contends that the statements concerning the anonymous phone call are hearsay and fail to fall within any exception to that rule. Additionally, appellant asserts that not only was the testimony concerning the call highly prejudicial and irrelevant, but also there was no way to cross-examine an anonymous phone caller. The state contends that the trial court properly allowed testimony of the police officers regarding the anonymous phone call to be introduced in evidence since the testimony was not being offered for the truth of the matter asserted, but for the limited purpose of showing a motive for the officers' conduct in including the defendant's picture in the book of photographs shown to the victim.

██ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.Va.R.Evid. 801(c). Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible[5] unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other

purpose such as motive, intent, state-of-mind, identification or reasonableness of the parties action[6]; 2) the statement is not hearsay under the rules[7]; or 3) the statement is hearsay but falls within an exception provided for in the rules. *See W.Va.R. Evid.* 803 & 804.

In the present case, the rationale for permitting the officers to testify is that the anonymous phone caller's statement implicating the defendant was necessary to show the motive or reasonableness of the police officers' actions in including the defendant's photograph in the group shown to the victim. In other words, the statement is not hearsay since it is not being offered for the truth of the matter asserted. This application is not unlike that found in the case of *State v. Paun,* 109 W.Va. 606, 155 S.E. 656 (1930). In *Paun,* the defendant was convicted of unlawfully selling liquor. The defendant sold the liquor to a deputy sheriff in a pool room owned by the defendant. The deputy testified that he attempted to purchase whiskey from the defendant after being informed that the liquor was being sold at the pool room. 155 S.E. at 657. This Court held that "[t]he hearsay rule excludes such testimony only when offered 'as evidence of the truth of the matter asserted'; and does not operate against such testimony offered for the mere purpose of explaining previous conduct." *Id.* (citing 16 C.J. *Criminal Law* § 1233); *see also State v. Corbin,* 117 W.Va. 241, 186 S.E. 179 (1936).

There are basically two problems involved when attempting to successfully argue that the anonymous phone caller's information regarding the defendant is not hearsay. First, in analyzing Officer Young's testimony there is a potential hearsay within hearsay problem.[8] Specifi-

---

4. At trial, defendant's attorney fiercely objected to the admission of this evidence, not only making a motion to strike both of the officers' testimony regarding the anonymous phone call, but also moving for a mistrial based on their testimony.

5. W.Va.R.Evid. 802.

6. *See* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8.3(E) (2d ed. 1986 & Supp.1989).

7. *See* W.Va.R.Evid. 801(d).

8. West Virginia Rule of Evidence 805 provides "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

cally, Young testified in response to questioning by the prosecutor regarding how Maynard became a suspect as follows:

Q: After talking with Mrs. Rambaugh on the 11th day of December, 1986, did you subsequently and without telling me the contents of the conversation, detective, receive information from Detective Lanham that he had received an anonymous phone call implicating Mr. Maynard?

A: That's correct.

Consequently, there are two potential hearsay statements in the above-mentioned testimony: The anonymous phone caller's remarks to Detective Lanham and Detective Lanham's statement to Detective Young. Thus, in order for his testimony to be properly admitted both statements must either be found to be not hearsay or there must exist an exception for each declarant's statement that was made. *See* W.Va.R. Evid. 805.

As is evident from the record, neither of the statements made by either of the declarants would be hearsay since, theoretically, the reason for the introduction of the statements was not for the truth of the matter asserted, but to show the reason why Detective Lanham instructed Detective Young to include defendant's photograph in the book shown to the robbery witness.

■ Therein lies the second problem which centers more on a question of relevancy. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.Va.R.Evid. 401.

■ Thus, if the issue before the lower court had been why the defendant was considered a suspect in the crime, there is no question that the hearsay statement could have been admitted for the limited purpose of explaining why the police offi-

cers included his photograph.[9] However, that simply was not an issue in this case. Even though the defendant during suppression did challenge the in-court and out-of-court identifications made by the witness, there was never a challenge as to how the defendant's picture got placed with the photographs shown to the witness. As a matter of fact, according to the transcript of the suppression hearing, defense counsel specifically asked that the judge to "prohibit him [Officer Young] from saying how the defendant's picture got into the photo line-up ...", to which the prosecutor responded:

Judge, I could cut this short. I have already advised these witnesses not to mention the fact that this man's photograph was obtained from any file that they had because of the implication that it would give to the jury unless they were specifically asked by defense counsel where the photograph was obtained. So I don't think any witnesses will be mentioning in front of the jury where the photograph was attained [sic] and certainly not in any instance by the state.

Therefore, since the issue was not relevant to the prosecution, nor the defense, it was error to allow Detectives Young and Lanham to testify about the anonymous phone call which implicated the defendant.

■ West Virginia Rule of Criminal Procedure 52(a), however, provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In interpreting this rule, we have previously held in Syl.Pt. 6, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987) that:

'Where improper evidence of a non-constitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining

---

9. It should be noted that defense counsel did not request a limiting instruction, nor was one given by the trial court to the jury indicating that the hearsay statement was admitted for the limited purpose of explaining why the police

officers included the defendant's photograph. The better practice in cases such as this, would be for the trial court to give a limiting instruction.

evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must be made to determine whether the error had any prejudicial effect on the jury.'

In *Smith,* this Court found that a hearsay statement made by the victim of a crime was inadmissible hearsay and improperly admitted.[10] We concluded that no reversible error had been committed by the admission of this hearsay at trial, however. 178 W.Va. at 114, 358 S.E.2d at 198–99.

▮ Similarly, in the present case, we find no reversible error was committed since without the hearsay statements, there was sufficient evidence to warrant a guilty verdict by the jury. The evidence included not only a positive identification by the victim, but also bootprints found at the crime scene which were consistent with the defendant's boots, and the clothing the defendant was wearing at the time of the arrest which was similar to that described by the witness and the identification made of the defendant by the victim. Further, we also conclude that the hearsay was not sufficiently prejudicial on the jury to warrant a reversal. This determination is based upon the fact that the contents of the phone conversation by the anonymous phone caller were not revealed to the jury and the officers' testimony regarding the anonymous phone call was limited solely to the reason for including the defendant's photograph in the group shown to the victim.

Therefore, although error was committed by the lower court in allowing the officers' testimony regarding the anonymous phone caller and her implication of the defendant in the robbery, we conclude that the error was harmless error.

## II.

The other two assignments of error involve instructions offered by the defendant which the trial court refused to give. First, the defendant contends that since the identification of the assailant by the victim was the key issue in the trial, the trial court committed reversible error by refusing to give defendant's instructions Nos. 13 and 19 which are as follows:

Defendant's instruction No. 13

The Court instructs the jury that if you believe from the evidence in the case that the crime charged against the defendant rests along [sic] on the testimony of the prosecuting witness, Sandra Rambaugh, then the jury should scrutinize such testimony with care and caution.

Defendant's instruction No. 19

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identify [sic] beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the corrections [sic] of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

1. Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected

---

**10.** The hearsay involved a statement made by the victim to an acquaintance to the effect that the defendant, on the day prior to the victim's death, had struck him and taken $100.00 from him. *Smith,* 178 W.Va. at 112, 358 S.E.2d at 196.

by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.

2. Are you satisfied that the identification made by the witness subsequent to the offense was a product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

3. You may take into account any occasions in which the witness failed to meka [sic] an identification of defendant, or made an identification that was inconsistent with his identification at trial.

4. Finally you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find defendant not guilty.

The state contends that these instructions are only appropriate where there is an absence of any evidence corroborating the prosecuting witness's testimony.

The appellant argues that instruction 13 should have been given based on our decision in *State v. Payne*, 167 W.Va. 252, 261, 280 S.E.2d 72, 78 (1981) where we held that

[w]here the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution.

In *Payne*, where the defendant was convicted of statutory rape, we found the above-mentioned instruction necessary because the defendant was the only person who could have contradicted the testimony of the prosecuting witness and the defendant due to other errors at trial, was effectively precluded from taking the stand. 167 W.Va. at 261, 280 S.E.2d at 78. Further, the identification itself was questionable since the prosecuting witness did not see her assailant until they were in a shaded area. Also, the description she gave prior to the identification of the defendant was inconsistent with the defendant's actual physical appearance. *Id.* 167 W.Va. at 260, 280 S.E.2d at 77.

In the present case, the witness Rambaugh, saw the defendant in a well-lit convenience store. Additionally, the description that she gave prior to identifying the defendant was not inconsistent with defendant's actual appearance. Finally, in this case the defendant did take the stand to contradict the witness's testimony. Her testimony was also corroborated by boots and clothing, particularly a blue jacket, found on the defendant at the time of his arrest which she included in her description given to the police when the crime occurred. Additionally photographs of boot-

prints were taken behind the Village Chevron during the investigation of the crime.

██ The appellant's contention that instruction No. 19 should have been given is without merit. In *Payne* we held that:

We think that this type instruction may be appropriate in cases where the State's case rests largely upon the uncorroborated identification testimony of a witness. The instruction may also be modified to fit the circumstances of any other type of case involving identification testimony where, in the trial judge's discretionary opinion, the giving of such an instruction would aid the jury. We emphasize that we are not here mandating the use of this type instruction in every case involving the identification testimony. Rather, we note that this type instruction may be proper in cases where the identification testimony is uncorroborated.

*Id.* 167 W.Va. at 263, 280 S.E.2d at 79.

In this case, the trial judge did give the first paragraph of the instruction offered by the defendant to the jury. Upon the facts in this case, we find that the trial judge acted properly and within his discretion, committing no reversible error.

██ Finally, the defendant argues that the trial court committed reversible error in refusing to give defendant's Instruction No. 14 which was that:

You are instructed that when two (2) inferences, equally plausible, may be drawn from the evidence in the case, the law does not permit the jury to arbitrarily adopt the one more unfavorable to the accused, but rather requires you, as members of the jury, to adopt the inference [sic] most favorable to the accused, and if found by you proper, to then acquit the defendant and find him not guilty.

The state contends that the trial court properly refused to give this instruction since it was repetitious after giving state's Instruction No. 1, in which the jury was instructed that

if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt that the defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

We find that the trial court acted properly in refusing to the give the defendant's offered instruction since " '[i]nstructions that are repetitious or are not supported by the evidence should not be given to the jury by the trial court.' Syllabus Point 7, *State v. Cokeley*, [159] W.Va. [664], 226 S.E.2d 40 (1976)." Syl.Pt. 6, *State v. Meadows*, 172 W.Va. 247, 304 S.E.2d 831 (1983).

Therefore, based on the foregoing opinion, we affirm the opinion of the Circuit Court of Kanawha County.

Affirmed.